J-S11001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.M.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| A.M. | |
| v. | |
| K.C. & L.C., INTERVENORS | |
| APPEAL OF: K.C. & L.C. | 1637 MDA 2014 |

Appeal from the Order entered September 10, 2014
in the Court of Common Pleas of Wyoming County
Civil Division, at No(s): 2008-CV-807

BEFORE:  PANELLA, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.                    **FILED MARCH 02, 2015**

K.C. and L.C., ("Intervenors/Parental Grandparents"), appeal from the order entered on September 10, 2014, awarding A.M. ("Mother") sole legal custody and primary physical custody of the minor child, C.M.S. ("Child") born in August 2007, and, following counseling, granting Paternal Grandparents periods of partial custody on the third weekend of every month from Friday after school or 4:00 p.m. until Sunday at 4:00 p.m. and two non-consecutive weeks in the summer.  We affirm.

Mother and J.M.S. ("Father") are natural parents of Child.  **See** N.T., 8/17/13, at 34.   Mother resides in Springville, Susquehanna County, with her fiancé, J.B.  **See id**. at 33, 138.  Mother and Father had one other child together, who was given up for adoption approximately three years ago.

*See id*. at 34. The record reveals that Father was not present for any of the custody hearings or conferences, and has not been allowed any visitation of Child since September 28, 2012. *See id*. at 35.

During Child's early years, Mother and Father both had a persistent history of drug and alcohol abuse. As a result, Child primarily resided with Paternal Grandparents from approximately November 2010 until the trial court order entered October 8, 2013.

Specifically, Mother was a heroin addict who began utilizing drugs at the age of thirteen. *See id*. at 48. Mother was also charged with theft related offenses in April 2011, and was placed in the Wyoming County Drug Treatment Court program on April 13, 2011. *See id*. at 45-47. She successfully graduated from the program on May 23, 2013. *See id*. at 48. Mother has been sober since February 18, 2012. *See id*. at 49.

Mother has attempted to get physical custody of Child since the time that she entered the Treatment Court program. *See id*. at 50. At first, Mother was permitted phone contact with Child. Later, Mother's contact with Child was expanded to periods of supervised visitation. *See id*. at 52. Following Mother's relapse in February 2012, Mother's visits with Child were suspended. *See id*. Shortly thereafter, Mother was once again granted supervised visitation of Child, and eventually was granted unsupervised, over-night visitation. *See id*. at 52. At the time of the first hearing, Paternal Grandparents had primary physical custody of Child, and Mother had periods of partial physical custody.

On October 8, 2013, the trial court awarded Mother sole legal custody and primary physical custody of Child, and awarded Paternal Grandparents periods of partial physical custody. Paternal Grandparents timely appealed the order to this Court, which vacated the matter and remanded the case to the trial court on May 28, 2014. Mother then filed two Petitions for Special Relief.

Mother's first petition requested that the order entered October 8, 2013, remain status quo following the decision of the Pennsylvania Superior Court. The petition was granted on May 28, 2014. Mother's second petitionrequested that Child's period of partial custody with Paternal Grandparents be suspended. That petition was also granted. Thereafter, on August 18, 2014, Paternal Grandparents also filed a Petition for Special Relief seeking to reinstate their periods of partial custody.

A hearing was held on the Petitions. On September 10, 2014, the trial court ordered that the best interests of Child would be served with Mother having primary physical custody and sole legal custody of Child, and the Paternal Grandparents having periods of partial custody. This timely appeal followed.

Paternal Grandparents raise the following issue for review:

1. Whether the [l]ower [c]ourt's ruling in awarding custody to the Defendant, [A.M.], was an abuse of discretion, contrary to the weight and sufficiency of the evidence, a failure to properly and adequately consider the sixteen (16) best interest factors and a failure to consider the best interest of the minor child at issue?

Paternal Grandparents' Brief at 5.

Initially, we observe that, as the hearing in this matter was held in August 2014, the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321 to 5340, is applicable. *See C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

In custody cases, our standard of review is as follows.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Id*. at 443 (citation omitted).

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

-4-

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting

*Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In **M.A.T. v. G.S.T.**, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we

stated the following regarding an abuse of discretion standard.

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id*. at 18-19 (quotation and citations omitted).

With any custody case decided under the Act, the paramount concern

is the best interests of the child. **See** 23 Pa.C.S.A. §§ 5328, 5338. Section

5338 of the Act provides that, upon petition, a trial court may modify a

custody order if it serves the best interests of the child. **See** 23 Pa.C.S.A.

§ 5338. Section 5328(a) of the Act sets forth the sixteen best interest

factors that the trial court must consider. **See E.D. v. M.P.**, 33 A.3d 73, 80-

81, n.2 (Pa. Super. 2011).

Section 5328 of the Act provides as follows.

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one

another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.[1]

In applying the Section 5328(a) factors, the trial court found the following, which we paraphrase, below.

1. Which party is more likely to encourage and permit frequent and continuing contact between Child and the other party. Child's birthday was on August 2, during the time when Paternal Grandparents' periods of custody were suspended. At the time, Mother contacted Paternal Grandmother and offered to meet Paternal Grandparents at McDonald's following Child's soccer game so that Paternal Grandparents could see Child for his birthday. Paternal Grandmother refused, and Paternal Grandparents did not call Child on his birthday. Paternal Grandfather testified that he declined to visit Child on his birthday out of fear of violating trial court's Order. Paternal Grandfather further testified that he contacted his attorney concerning visiting with Child on his birthday; however, Paternal Grandfather did not file a petition to see Child. Mother noted that she filed a Petition for Special Relief to end Paternal Grandparents' periods of visitation because Child's contact with Paternal Grandparents was not healthy. Mother noted that she would like to continue Paternal Grandparents' periods of custody as long as Child's visits with Paternal Grandparents are healthy, and if Paternal Grandparents engage in some sort of counseling.

---

[1] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services), which is not applicable to the facts of this case.

2. **Abuse committed by a party or a member of a party's household.** The trial court found no allegations of abuse in either Mother's or Paternal Grandparents' homes.

3. **The parental duties performed by each party on behalf of Child.** Evidence revealed that, since Child was a kindergarten student and did not have much homework, Mother maintained a schedule for Child which included books, journals, and reading every night. Mother participated in a library program with Child, and Mother has a discipline system in place in which, if Child gets fifteen stars, he gets a prize, and, if he loses stars, he loses privileges such as toys or electronics. The trial court also found that Mother takes Child to extracurricular activities, which Paternal Grandparents refused to do. Mother has taken Child to counseling sessions and participated in the sessions. Paternal Grandparents have not participated in any counseling sessions with Child, but have not been asked to do so by the counselors.

4. **The need for stability and continuity in Child's education, family life, and community life.** Mother is scheduled to marry J.B. on September 13, 2014, and Child is very excited to be a part of the ceremony as the ring bearer. Mother has resided with J.B. since obtaining primary custody of Child, and Child and J.B. have become very close.

5. **The availability of extended family.** Since residing with Mother, Child has been able to spend time with his cousin and Mother's fiancé's family. The families have taken vacations together in Ocean City, Maryland.

6. **The Child's sibling relationships.** The trial court did not consider this point since Child does not have any siblings.

7. **The well-reasoned preference of the Child, based on Child's maturity and judgment.** The trial court did not conduct an *in camera* interview with Child due to his young age.

8. **The attempts of a parent to turn the Child against the other parent, except in cases of domestic violence where the reasonable safety measures are necessary to protect the Child from harm.** Mother testified that Child is aware of the custody action, and that she and Child's therapist have been

working with Child to deal with visitation and other problems concerning Child's relationship with Paternal Grandparents.

9. <u>Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the Child's emotional needs.</u>  The trial court found that, at this time, Mother is better able to provide Child with a loving, stable, consistent and nurturing home.

10. <u>Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child</u>.  The trial court found that, since the court's October 8, 2013 order, Child has resided primarily with Mother and has attended Elk Lake School District.  Child has completed [k]indergarten and is currently enrolled in the first grade.  The court found that Child successfully participated in extracurricular activities and will continue to do so during the current academic year, and that Child attends Sunday School with his cousin.  Child has problems with bed wetting.  Mother testified that there is a correlation between bed wetting and Child's return from a weekend with Paternal Grandparents.  Mother has attempted to discuss the issue with Paternal Grandmother, but she denies that bed wetting ever occurred during Child's visits with Paternal Grandparents.  Paternal Grandfather also testified that bed wetting never occurred during Child's visits with Paternal Grandparents.  In addition, although Paternal Grandparents did not have legal custody of Child, they took Child to Child's former physician, Dr. Goodrich, without Mother's consent.  Paternal Grandparents noted that they were worried about Child health, but never spoke with Mother concerning the visit or the outcome of the visit with Mother.

11. <u>The proximity of the residences of the parties</u>.  The court found that the parties live approximately fifteen miles apart, despite Paternal Grandmother's testimony that they live two hours from each other.

12. <u>Each party's availability to care for Child or ability to make appropriate child care arrangements</u>.  The trial court determined that Mother is not working and was available to care for Child at all times.  Paternal Grandparents are also available to care for Child.

13. <u>The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another</u>. Mother testified that Maternal Grandmother gave Child tickets to a wrestling event. Child was excited to attend the event due to his involvement in wrestling as an extracurricular activity. As the event was scheduled on a weekend that Child was scheduled to be with Paternal Grandparents, Mother attempted to switch [the] weekend with Paternal Grandparents, who declined. Mother even offered the tickets to Paternal Grandparents to take the Child to the event, but the Paternal Grandparents also declined. Paternal Grandparents testified that they felt that the event was inappropriate, and Mother had to petition the trial court requesting permission to allow Child to attend, which was granted by the court. Since many of Child's extracurricular activities fell on weekends that Paternal Grandparents had custody, they would forego their period of custody and have Mother pick up Child to take him to his activity. Paternal Grandparents also did not attend any tee ball practices or games. Paternal Grandmother testified that she felt the six hours for a wrestling match or baseball game "away from the farm" was an interruption since it was not a part of her visitation.

14. <u>The history of drug or alcohol abuse of a party or a member of a party's household</u>. The trial court addressed Mother's past drug and history. Mother attends meetings approximately three times a week and is living a sober lifestyle.

15. <u>The mental and physical condition of a party or member of a party's household</u>. The trial court found that Mother has relocated from a trailer to a four bedroom home that sits on approximately thirty acres in Susquehanna County, Pennsylvania, two miles from where the trailer was located, which Mother is renting with her fiancé. Child has his own bedroom in the home. Mother testified that, in June of 2014, she was contacted by the Susquehanna County Children and Youth because allegations were made that Mother's home was unsafe, and she was suspected of utilizing drugs. Mother voluntarily presented herself to Children and Youth for a urine screen, which was negative, and a social worker inspected her home. The investigation was closed as "unfounded." Although a representative of CYS testified that that the source of the allegation made against Mother was confidential, Paternal Grandfather testified that he was the one who called CYS.

16. <u>Any other relevant factor</u>. The trial court found no other relevant factors.

Trial Court Opinion, 9/20/14, at 8-19.

We have reviewed the trial court's thorough analysis of the statutory custody factors contained in its order and its opinion in light of the record, and conclude that the record fully supports the trial court's conclusions regarding custody. Therefore, we find that the trial court properly determined that it is in Child's best interests to award Mother primary physical custody and primary legal custody of Child, and, following counseling, to award periods of partial physical custody of Child to Paternal Grandparents.

Accordingly, we affirm the order of the Court of Common Pleas of Wyoming County entered September 10, 2015.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/2/2015